# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF IDAHO

IN RE                          )

                                )     **Case No. 08-01956-TLM**

**ROOTS RENTS, INC.**         )

                                )     **Chapter 11**

                                )

               **Debtor.**    )

_____ )

## MEMORANDUM OF DECISION
_____

     This chapter 11 case comes before the Court on several matters heard on September 8 and 14, 2009.  This Decision constitutes the Court's factual findings[1] and legal conclusions.  Fed. R. Bankr. P. 7052 and 9014.

## BACKGROUND AND FACTS

     On September 10, 2008, Roots Rents, Inc., an Idaho corporation ("Debtor"), filed a voluntary petition for relief under chapter 11.  It has consistently served as debtor in possession since filing, and no trustee has been appointed.

     On its petition, Debtor checked a box designating that "Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D)."  Doc. No. 1 at 1.  That

_____

[1]  No evidence was presented at the September hearings.  Rather, counsel made only legal arguments.  The "facts" involved relate to the record of proceeding in this chapter 11 case. The Court takes judicial notice of its files, Fed. R. Evid. 201, in order to detail in this Decision that course of events.

MEMORANDUM OF DECISION - 1

section provides in pertinent part:

> The term 'small business debtor' . . . means a person engaged in commercial or business activities . . . that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the petition . . . in an amount not more than $2,190,000 . . . for a case in which the United States trustee has not appointed under section 1102(a)(1) a committee of unsecured creditors[.]

Section 101(51D)(A).[2]

On September 25, 2008, Debtor filed an amended petition.  Doc. No. 12.

The amended petition also contained Debtor's self-designation as a small business

debtor, and it provided, as attachments, the financial statements and tax returns

required of small business debtors by § 1116(1)(A).  Like the original petition, the

amended petition was executed by Debtor's president, David Root, under penalty

of perjury as true and correct.

In October, 2008, Debtor filed its schedules.  Doc. No. 23.  They

established a total of $1,740,433.38 in secured and unsecured debt, of which

$49,843.17 was marked on schedule D as contingent, thus yielding a total of

$1,690,590.21 in "aggregate noncontingent liquidated secured and unsecured"

---

[2]  Throughout this Decision, all statutory references are to the Bankruptcy Code, Title 11 U.S. Code, §§ 101-1532, unless otherwise indicated.  In this case, the United States Trustee has not appointed a creditors' committee.  *Cf.* Fed. R. Bankr. P. 1020(c) (addressing circumstances under which a case may proceed as a small business case notwithstanding the appointment of such a committee).

MEMORANDUM OF DECISION - 2

debt for purposes of § 101(51D)(A).  *Id.*[3]

On February 24, 2009, Debtor filed a disclosure statement.  Doc. No. 85.

This disclosure statement notes on its first page that Debtor's case is a small

business case, and the same notation appears on the first page of an appended

proposed chapter 11 plan.  *Id.* at 1, 15.

Debtor filed its proposed plan on March 15, 2009.  Doc. No. 93 ("Plan").

As discussed below, this is a significant date given the language of the Bankruptcy

Code as amended in 2005.[4]

On March 25, 2009, the Court issued a notice of hearing on approval of the

disclosure statement.  Doc. No. 102.  The hearing was set for April 27, 2009.  This

notice and scheduled hearing complied with the requirements of Fed. R. Bankr. P.

2002, which requires not less than twenty-five days notice of the time fixed for

filing objections to and of the hearing to consider approval of a disclosure

statement.[5]

---

[3]  None of the other debts listed on Debtor's schedules D, E or F are identified as contingent or unliquidated.  An amended schedule D was filed later that same month, *see* Doc. No. 26; however, the total amount of debt was the same as in the earlier schedule D (*i.e.*, $1,462,209.63), and there were no changes in debts marked as contingent or unliquidated.

[4]  Several of the Code provisions critical to this case were added or modified by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005) ("BAPCPA").

[5]  There are alternative approaches available to a small business debtor, including conditional approval of disclosure statements or waiver of the requirement of a disclosure statement given the information provided in the plan, *see* § 1125(f)(1) and (f)(3), but Debtor did
(continued...)

MEMORANDUM OF DECISION - 3

On April 27, at the scheduled hearing, and after hearing from Debtor, several creditors, and the United States Trustee ("UST"), the Court denied approval of the proposed disclosure statement.  Doc. No. 128 (minute entry).[6]

About one month later, Debtor's counsel filed an application for allowance of interim compensation.  *See* Doc. No. 135.  Other than the filing of this application, some operating reports and some pleadings related to stay relief disputes, no activity occurred in the case until the UST filed a motion to convert or dismiss the case under § 1112(b) on July 28.  Doc. No. 149 ("Dismissal Motion").

The UST's Dismissal Motion noted the requirement of § 1129(e) that:

> In a small business case, the court shall confirm a plan that complies with the applicable provisions of this title and that is filed in accordance with section 1121(e) not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with section 1121(e)(3).

The UST observed that no extension of time under § 1121(e) had been sought or granted, and that the 45 days from the Plan's March 15 filing expired on April 29, 2009.  It argued that the failure to timely confirm, or to have properly requested and obtained an extension of the confirmation deadline, constituted cause for

---

[5](...continued)
not request or pursue these options.

[6]  The UST and a creditor, Tennessee Commerce Bank, objected to approval of the disclosure statement, Doc. Nos. 117, 119, and their counsel appeared at the hearing.  Other objections to approval of the disclosure statement were filed.  *See* Doc. Nos. 114, 115.  One creditor filed a "notice of non-objection."  *See* Doc. No. 126.

MEMORANDUM OF DECISION - 4

dismissal or conversion of the case.[7]

The following day, Debtor filed an amended small business plan of reorganization, Doc. 152 ("Amended Plan"), and an amended small business disclosure statement, Doc. No. 153 ("Amended Disclosure").[8]  A few days later, Debtor filed a § 331 application for compensation of its accountant.  Doc. No. 154.

Then, on August 2, Debtor responded to the UST's Dismissal Motion by filing the following:

1.    An "amended" petition for relief, Doc. No. 157 ("Amended Petition") that checked the box designating Debtor as "not a small business debtor as defined in 11 U.S.C. § 101(51D)."

2.    An objection to the Dismissal Motion.  Doc. No. 158.

3.    A "Motion for Extension of Time for Confirmation" under § 105 and § 1129(e), Doc. No. 159 ("Extension Motion"), related to the Amended Plan and asking for 60 days after September 8 within

---

[7]  The UST alleged generally that "cause" existed under § 1112(b)(1).  Within the nonexclusive listing of "cause" under § 1112(b)(4) is the "failure to file a disclosure statement, *or to* file or *confirm a plan, within the time fixed by this title* or by order of the court[.]"  Section 1112(b)(4)(J) (emphasis added).

[8]  The "small business case" denomination appears on the face page of each document, and the amended disclosure statement starts by stating:  "This is the disclosure statement (the 'Disclosure Statement') *in the small business case* of Roots Rents, Inc. (the 'Debtor')."  Doc. No. 153 at 1 (emphasis added).

MEMORANDUM OF DECISION - 5

which to obtain confirmation of that Plan under the small business

case requirements.

4.    A "Motion for Determination of Small Business Status" under Fed.

R. Bankr. P. 1020(d), Doc. No. 160 ("Status Motion"), seeking a

ruling that Debtor is not a small business debtor and that, therefore,

the requirements of the BAPCPA-amended Code related to such

debtors are inapplicable.

Debtor did not withdraw its Amended Plan and Amended Disclosure Statement

which asserted it *was* a small business debtor in a small business case.  Instead,

these four matters, the two § 331 applications, and the approval of the Amended

Disclosure Statement came on simultaneously for hearing on September 8.  The

parties also addressed the Dismissal Motion at the September 8 hearing.[9]  Debtor

argued in the alternative for approval of the Status Motion or the Extension

Motion; though these positions are mutually exclusive, success on either could

potentially defeat the Dismissal Motion.

---

[9]  Though the Dismissal Motion was argued by the UST, Debtor and the other parties at
the September 8 hearing, it was noticed out to all creditors with a September 14 hearing date, and
the Court therefore held the September 14 hearing.  No creditor appeared at the September 14
hearing, and the Court took the dismissal motion under advisement at that time.  Among other
things, § 1112(b)(3) requires the Court to render a ruling not later than 15 days after the hearing
"unless . . . compelling circumstances prevent the court from meeting the time limits established
by this paragraph."  This Decision's date exceeds the 15-day requirement.  However, the parties
presented issues of first impression regarding the small business case deadlines, and several
alternative approaches and arguments related to the same.  The Court finds the additional delay
beyond the proscribed 15 days falls within the statutory exception.

MEMORANDUM OF DECISION - 6

**DISCUSSION AND DISPOSITION**

    **A.**    **Statutory construction**

    The principles guiding this Court's construction and application of the

Code are well known.  The Court must start with the language of the statute.  If the

statutory language is plain, it must be enforced according to its terms, and this

Court's analysis is complete unless such a reading would lead to an absurd result.

*Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 872 (9th Cir. 2008)

(citing *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004)); *Culver, LLC v. Chiu

(In re Chiu)*, 266 B.R. 743, 749 (9th Cir. BAP 2001).  To determine if a statute's

language is plain, the Court must look to "the language itself, the specific context

in which that language is used, and the broader context of the statute as a whole."

*Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997); *see also Hibbs v. Winn*, 542

U.S. 88, 101 (2004) (referencing the "cardinal rule that statutory language must be

read in context [since] a phrase gathers meaning from the words around it").

    The Ninth Circuit recently stated:

>     BAPCPA has been criticized for its lack of clarity.  We agree
> that BAPCPA is hardly the very model of a well-drafted statute.
> However, it is our task to interpret the laws as passed by Congress
> without attempting to force them to cohere more than their words
> allow.  *See Miller v. Daimler-Chrysler Fin. Servs. Ams., LLC (In re
> Miller)*, 570 F.3d 633, 639 (5th Cir. 2009) ("[P]erceived poor drafting
> [in BAPCPA] should not be regarded as a license to invalidate plain-
> text readings in the name of fixing a statute that some believe is
> broken.").

MEMORANDUM OF DECISION - 7

*Dumont v. Ford Motor Credit Co. (In re Dumont)*, 581 F.3d 1104, 1110-11 (9th Cir. 2009). Further, the Circuit acknowledged "traditional canons of statutory interpretation" including avoiding a construction that would render any clause, sentence or word superfluous, void or insignificant. *Id.* (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).

     **B.**     **Small business cases under BAPCPA and elimination of election**

Prior to BAPCPA a chapter 11 debtor elected whether to proceed as a small business and incur the burdens and benefits associated with such an election. *See* § 1121(e) (2004) (establishing certain deadlines "[i]n a case in which the debtor is a small business *and elects to be considered a small business*[.]" (Emphasis added)). BAPCPA eliminated any "election" by the debtor by amending former § 101(51C) and defining a "small business case" as "a case filed under chapter 11 of this title in which the debtor is a small business debtor." *See* § 101(51C).[10] As material to the present matter, the definition of a small business debtor requires not more than $2,190,000 in aggregate, noncontingent, liquidated, secured and

---

[10]  *See* Hon. Thomas E. Carlson & Jennifer Frasier Hayes, *The Small Business Provisions of the 2005 Bankruptcy Amendments*, 79 Am. Bankr. L.J. 645, 679 (2005) ("The most important change in the definition of 'small business' debtor is that small business treatment is no longer elective. The cost-and-delay reduction provisions are now mandatory for all Chapter 11 debtors who satisfy the debt and type-of-business limitations of § 101(51D).").

MEMORANDUM OF DECISION - 8

unsecured debt as of the date of the petition.[11]  *See* § 101(51D)(A).  If a debtor

satisfies the requirements of § 101(51D), its bankruptcy case is a small business

case and the BAPCPA-amended Code's small business timing provisions and

deadlines are applicable.

At the time of filing the petition, Debtor affirmed it was a small business

debtor, and its case was a small business case.  This declaration was consistent

with Debtor's scheduled $1,690,590.21 in qualifying debt.  According to Debtor's

schedules, it was $499,409.79 shy of no longer qualifying as a small business

debtor.

### C.    Deadlines in a small business case

Every chapter 11 debtor is faced with a plethora of deadlines.  Those for a

small business debtor vary from those for other chapter 11 debtors.

For example, under § 1121(e), a small business debtor – such as Debtor

here – is the only entity that may file a plan in the first 180 days of the case (unless

that period of exclusivity is extended or the court orders otherwise).  *See*

§ 1121(e)(1).  This is a longer period of exclusivity than the 120 days a non-small

business debtor enjoys.  *See* § 1121(c)(2).[12]  But the statute gives the small

---

[11]  An alternative date for measurement of aggregate debt is the date of the order for
relief.  *Id.*  This would constitute a date other than the petition date only in involuntary cases.  *See*
§§ 102(6), 301(b), 303(h).

[12]  If the non-small business debtor files a plan, it then has 180 days to confirm the same,
(continued...)

MEMORANDUM OF DECISION - 9

business debtor burdens as well.  The small business debtor has an outside bar of

300 days from the order for relief (here, the petition date) within which it must file

a disclosure statement and plan.  *See* § 1121(e)(2).[13]  There is no similar Code-

imposed bar for non-small business debtors.

 Additionally, as noted above, § 1129(e) now provides that "*the court shall*

*confirm a plan . . . that is filed in accordance with section 1121(e) not later than*

*45 days after the plan is filed* unless the time for confirmation is extended in

accordance with section 1121(e)(3)."  (Emphasis added).  This is a plainly-

worded, express deadline.  It effectively mandates that any small business debtor

choosing to follow a "traditional" disclosure statement approach, rather than

asking the Court to waive the need for a disclosure statement or to conditionally

approve a disclosure statement under § 1125(f)(1) or (3), *must* file a § 1121(e)(3)

motion, to be heard on notice, and establish grounds for a timely-entered order

extending the 45-day confirmation deadline.[14]

---

 [12](...continued)
and no other party may file a plan during that period.  *See* § 1121(c)(3).  The non-small business
debtor may seek extensions of the 120-day and 180-day exclusivity periods to 18 months and 20
months, respectively.  *See* § 1121(d)(2)(A), (B).

 [13]  Debtor's March 15, 2009 Plan was filed a few days after the termination of the
exclusivity period, but well within the 300-day deadline.  No creditor attempted to file a plan.

 [14]  This is obvious because the traditional approach requires a minimum of 28 days notice
for approval of the disclosure statement and another 28 days for plan confirmation.  *See* Fed. R.
Bankr. P. 2002(b) (25-day notice), Fed. R. Bankr. P. 9006(f) (additional three days for mailing).
Thus, the traditional approach runs some 56 days at best, and will almost certainly result in a

 (continued...)

MEMORANDUM OF DECISION - 10

### 1.      Extension of deadlines in a small business case

In this case, while Debtor filed an Extension Motion, on its face, that

Motion only requests relief from deadlines arising from the filing of Debtor's

*Amended Plan*.  Debtor appears to ignore or discount the Code's express timing

requirements as they pertain to its *original Plan*.  Debtor's Amended Plan and

related Extension Motion do not negate Debtor's failure to properly extend the 45-

day deadline.  However, since Debtor did file the Extension Motion and make

arguments at the September 8 hearing, which, if liberally construed, could be

viewed as a request for extension of the 1129(e) deadline arising from the filing of

the original March 15 Plan, the Court will analyze such a request.

Section 1129(e) expressly provides that § 1121(e)(3) controls the granting

of any extension of the 45-day period within which confirmation must occur.  That

section requires:

> (e) In a small business case –
> . . .
>       (3) the time periods specified in paragraphs (1) and (2), and the
> time fixed in section 1129(e) within which the plan shall be confirmed,
> may be extended only if –
>             (A) the debtor, after providing notice to parties in interest
>       (including the United States trustee), demonstrates by a
>       preponderance of the evidence that it is more likely than not that

---

[14] (...continued)
confirmation hearing more than 45 days from the date of the filing of the plan.  In the instant
case, Debtor obtained a scheduled and noticed hearing on approval of its Disclosure Statement for
April 27, 2009.  The 45th day from the Plan's March 15 filing was only two days later, on April
29.

MEMORANDUM OF DECISION - 11

the court will confirm a plan within a reasonable period of time;
(B) a new deadline is imposed at the time the extension is granted; and
(C) the order extending time is signed before the existing deadline has expired.

Section 1121(e)(3).[15]

There are three parts to § 1121(e)(3). They are conjunctively stated, meaning that each must be satisfied. *See In re Jayo*, 06.3 I.B.C.R. 71, 74, 2006 WL 2433451 at \*5 (Bankr. D. Idaho 2006) (addressing conjunctive and disjunctive construction). Thus, the deadlines of, *inter alia*, § 1129(e) "may be extended *only if*" all three of those statutory conditions are met. *See* § 1121(e)(3).

Given the requirements of the Code and construing Debtor's Extension Motion as a request to extend the deadline pertaining to its March 15 Plan, the Court must deny that request on a number of grounds. First, while there is little case law on § 1121(e)(3), what there is tends to focus on the evidentiary burden imposed on debtors under § 1121(e)(3)(A). *See, e.g., In re AMAP Sales & Collison, Inc.*, 403 B.R. 244, 246-48 (Bankr. E.D.N.Y. 2009); *In re JMC Outfitters Co.*, 2009 WL 2046043 (Bankr. W.D. Tex. May 25, 2009). The Court concludes that neither the allegations within the Extension Motion nor Debtor's presentation at the September 8 hearing meet the burden imposed on debtors under

---

[15] These standards for a small business debtor to obtain an extension are far more specific than what § 1121(d)(1) provides for non-small business debtors (*i.e.*, "the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section").

MEMORANDUM OF DECISION - 12

§ 1121(e)(3)(A).

Second, the plain language of § 1121(e)(3)(C) requires the order be obtained *before* the period expires. *In re Caring Heart Home Health Corp.*, 380 B.R. 908 (Bankr. S.D. Fla. 2008) (denying a debtor's request for a *nunc pro tunc* extension when the requirements of § 1121(e)(3) were not satisfied, finding that failure to meet the pre-deadline order requirement of § 1121(e)(3)(C) is "conclusive" on the issue of whether extension can be granted). Here, Debtor did not request an extension, and the Court did not enter an order, before the 45-day period ran from the filing of Debtor's March 15 Plan.

Nor can Debtor rely on this Court's equitable powers or any Federal Bankruptcy Rules to enlarge such time limitations. While, in certain circumstances, Rule 9006(b)(1) allows the Court to grant requests made after the period in question has expired given a showing of excusable neglect,[16] 28 U.S.C. § 2075 provides that the Bankruptcy Rules "shall not abridge, enlarge, or modify any substantive right." This statute has been interpreted to require any conflicts between the Code and Rules to be settled in favor of the Code. *Amer. Law Center PC v. Stanley (In re Jastrem)*, 253 F.3d 438, 441-42 (9th Cir. 2001) (citing *United States v. Towers (In re Pacific Atlantic Trading Co.)*, 33 F.3d 1064, 1066 (9th Cir.

---

[16] *See In re Montanaro*, 307 B.R. 194, 196 (Bankr. E.D. Cal. 2004) (characterizing motions based on Rule 9006(b)(1)'s grant of authority to the Court to enlarge time limitations on motions made after the time period has expired as "motions for retroactive extension").

MEMORANDUM OF DECISION - 13

1994).  *See also In re Williams*, 410 B.R. 491, 493-94 (Bankr. S.D. Tex. 2009)

(concluding 28 U.S.C. § 2075 prevents application of Rule 9023 so as to permit

granting extension of stay after the express time to do so under § 362(c)(3)(B) has

expired); *accord Caring Heart*, 380 B.R. at 910-11 ("Neither Rule 9006(b) nor

some other equitable power of this Court allows the Court to contradict the clear

meaning of a statute enacted by Congress.").  Thus, where the Code requires an act

to be completed within a specific time, the Court cannot apply a Rule to

circumvent that deadline.

The various constructions of the Code urged by Debtor to circumvent its

failure to timely seek and obtain an extension to confirm the Plan would require

the Court to ignore the plain language of the Code and interpret it in a way that

renders meaningless the express deadlines imposed.[17]  Therefore, the Court finds

and concludes Debtor failed to confirm its Plan within the time fixed by § 1129(e),

and that cause therefore exists to dismiss or convert this case under

§ 1112(b)(4)(J).

### D.    Debtor's "redesignation" and Status Motion

As an alternative response to the UST's Dismissal Motion, Debtor filed its

---

[17]  *Cf. Taylor v. Freeland & Kronz*, 503 U.S. 638, 644 (1992) (discussing Fed. R. Bankr.
P. 4003(b) objection deadlines and noting that "Deadlines may lead to unwelcome results, but
they prompt parties to act and they produce finality."); *Murrietta v. Fehrs (In re Fehrs)*, 391 B.R.
53, 67-68 (Bankr. D. Idaho 2008) (dismissing untimely § 727(d) complaint, citing, *inter alia*,
*Taylor*).

MEMORANDUM OF DECISION - 14

Amended Petition asserting it was not a small business debtor. It also filed the

Status Motion. Both are problematic.

### 1.    Rule 1020 and timing of designation

Though the prior process of "election" of small business changed to a

statutory qualification based on amount of debt, both BAPCPA and pre-BAPCPA

approaches are clearly (a) aimed at addressing the status as of the petition date and

(b) designed to achieve a prompt determination. Under the former regime, the

election had to be made within 60 days of the date of filing. Under the present

approach, the debtor is obligated to establish a position as to its status in the

petition itself.

The reasons are self-evident. Small business cases impose different

obligations and requirements (*see* §§ 1116, 1121(e), 1125(f) and 1129(e)), and it is

critical to know at the outset of the case if those Code provisions apply. Indeed,

§ 1116(1) requires certain financial documents to be provided by the small

business debtor with the petition or within 7 days thereafter, illustrating the time-

critical nature of the inquiry.[18]

Rule 1020 echoes the early-in-the-case approach.[19] It provides:

---

[18]    An unexcused failure to satisfy timely any filing requirement of Code or Rule
constitutes cause for dismissal under § 1112(b)(4)(F).

[19]    Amended Rule 1020 became effective on December 1, 2008. However, this Court
adopted interim rules while the federal rules were amended to address the BAPCPA changes.

(continued...)

MEMORANDUM OF DECISION - 15

(a) SMALL BUSINESS DEBTOR DESIGNATION.  In a voluntary chapter 11 case, the debtor shall state in the petition whether the debtor is a small business debtor.  In an involuntary chapter 11 case, the debtor shall file within 15 days after entry of the order for relief a statement as to whether the debtor is a small business debtor.  Except as provided in subdivision (c), the status of the case as a small business case shall be in accordance with the debtor's statement under this subdivision, unless and until the court enters an order finding that the debtor's statement is incorrect.

(b) OBJECTING TO DESIGNATION.  Except as provided in subdivision (c), the United States trustee or a party in interest may file an objection to the debtor's statement under subdivision (a) not later than 30 days after the conclusion of the meeting of creditors held under § 341(a) of the Code, or within 30 days after any amendment to the statement, whichever is later.

. . .

(d) PROCEDURE FOR OBJECTION OR DETERMINATION.  Any objection or request for determination under this rule shall be governed by Rule 9014 and served on: the debtor; the debtor's attorney; the United States trustee; the trustee; any committee appointed under § 1102 or its authorized agent, or, if no committee of unsecured creditors has been appointed under § 1102, the creditors included on the list filed under Rule 1007(d); and any other entity as the court directs.

The Rule requires self-designation at the time of the voluntary petition.

This is consistent with the definition of small business debtor at § 101(51D)(A), which focuses on the status of debts as of the petition date, and § 1116(1), which requires certain attachments to petitions in small business cases, and § 1121(e),

---

[19] (...continued)
Interim Rule 1020, adopted by this District on October 14, 2005, under its General Order No. 199, was in effect when Debtor filed its bankruptcy petition.  Interim Rule 1020 and amended Rule 1020 are identical.

MEMORANDUM OF DECISION - 16

which triggers differential deadlines in small business cases.

In proposing amended Rule 1020, the Advisory Committee on Bankruptcy

Rules noted that:

> Rule 1020 is essentially a new rule that reflects the change in the definition of a small business debtor made by the 2005 Act. The former rule is deleted, and the new rule provides a procedure for informing the parties, the United States trustee, and the court of whether the debtor is a small business debtor. It also provides procedures for bringing to the court disputes involving the proper characterization of the debtor. Because it is important to resolve such disputes early in the case, a time limit for objecting to a debtor's self-designation is imposed. Rule 9006(b)(1), which governs enlargement of time, is applicable to the time limits set forth in this rule. . . .

(May 2006). These thoughts are perpetuated in the advisory committee notes to

the ultimately adopted Rule:

> Under the Code, as amended in 2005, there are no longer any provisions permitting or requiring a small business debtor to elect to be treated as a small business. Therefore, the election provisions in this rule are eliminated.

> The 2005 amendments to the Code include several provisions relating to small business cases under chapter 11. Section 101 includes definitions of "small business debtor" and "small business case." The purpose of the new language in this rule is to provide a procedure for informing the parties, the United States trustee, and the court of whether the debtor is a small business debtor, and to provide procedures for resolving disputes regarding the proper characterization of the debtor. Because it is important to resolve such disputes early in the case, a time limit for objecting to the debtor's self-designation is imposed. Rule 9006(b)(1), which governs enlargement of time, is applicable to the time limits set forth in this rule.

Fed. R. Bankr. P. 1020, advisory committee notes.

Thus, clearly the Code and Rules contemplate that issues of proper

MEMORANDUM OF DECISION - 17

characterization of small business debtors and cases must be promptly resolved. The time-sensitive nature of the designation, and the imposition of a deadline for objections to and for prompt resolution of an initial self-designation weigh against Debtor's approach in this case.  It was not until almost a full year after its September, 2008 filing that Debtor filed its request for determination of Debtor's small business status.[20]

However, the issue is muddied because Rule 1020(b) allows for objections to the debtor's small business designation within the *later* of 30 days after the "statement" in the petition or "*within 30 days after any amendment to the statement.*"  *Id.* (emphasis added).  There are no time limitations on, or further provisions for, amendments found within Rule 1020.  However, Rule 1009(a) provides: "A voluntary petition, list, schedule, or statement may be amended by a debtor as a matter of course at any time before the case is closed."  *Id.*  Thus, Debtor's attempt to amend its designation almost a year after its bankruptcy filing, while in conflict with the goal of prompt resolution, would appear to be allowed under the Rules.

## 2.    Effect of amended designation and burden of proof

Even given Rule 1020(b)'s apparent allowance of amendment without

---

[20]   As noted below, Debtor relies on the filed proofs of claim to support the attempted recharacterization.  The proof of claim bar date in this chapter 11 case was January 15, 2009.  *See* Doc. No. 4; *see also* LBR 3003.1.  This deadline was almost seven months before the August 2, 2009 Amended Petition and Status Motion were filed.

MEMORANDUM OF DECISION - 18

express time limit and Rule 1009's directive to liberally allow amendments, such

an amended designation is not a fait accompli merely upon its filing.  As the Ninth

Circuit Bankruptcy Appellate Panel noted in considering Rule 1009's liberal

amendment approach in the context of exemptions, "the mere fact that [Debtors]

can [amend to] *claim* the exemption does not necessarily mean that they are

*entitled* to it."  *Knupfer v. Wolfberg (In re Wolfberg)*, 255 B.R. 879, 883 (9th Cir.

BAP 2000).[21]  Moreover, Rule 1020 states that "the status of the case as a small

business case *shall* be in accordance with the debtor's statement under this

subdivision *unless and until* the court enters an order finding that the debtor's

statement is incorrect."  Thus, while a debtor may amend its designation, it may

not be entitled to operate under that amended statement until it demonstrates that

its original statement was incorrect.[22]

Consistent with these views is the principle that prior filings made by

debtors are not nullified by later amendments.  *In re Kaskel*, 269 B.R. 709, 715

(Bankr. D. Idaho 2001) (quoting *In re Bohrer*, 266 B.R. 200, 201 (Bankr. N.D.

---

[21]  *See also Martinson v. Michael (In re Michael)*, 163 F.3d 526, 529 (9th Cir. 1998) (whether the debtor could amend their schedules to claim an exemption is a separate question from whether the exemption is allowable) (citing *In re Sandoval*, 103 F.3d 20, 22 (5th Cir. 1997) ("allowing an amendment claiming an exemption is different from allowing the exemption itself")).

[22]  Debtor argues the Court must follow its amended designation; however, Rule 1020's language references the designation required under that "subdivision," (*i.e.*, Rule 1020(a)'s required designation in the petition or within 15 days of the order for relief in an involuntary case) and the burden is on the party contesting that original designation to convince the Court that such designation was incorrect.  Here, Debtor is attempting to change the initial designation, thus it is Debtor's burden to demonstrate that the initial statement is incorrect.

MEMORANDUM OF DECISION - 19

Cal. 2001)).  *Kaskel* and *Bohrer* considered questions of amendments of

schedules, and the court in *Bohrer* stated:

> Bohrer appears to suffer from a substantial misapprehension as
> to the nature of schedules.  Statements in bankruptcy schedules are
> executed under penalty of perjury and when offered against a debtor
> are eligible for treatment as judicial admissions.  *In the Matter of
> Gervich*, 570 F.2d 247, 253 (8th Cir. 1978). . . .  When schedules are
> amended the old schedules do not, as Bohrer seems to argue, become
> nullities.  The only effect of amendment of a schedule is that the
> original schedule no longer has the binding, preclusive effect it might
> otherwise have.  It is still fully subject to consideration by the court as
> an evidentiary admission.  *White v. ARCO/Polymers, Inc.*, 720 F.2d
> 1391, 1396 n.5 (5th Cir. 1983).

266 B.R. at 201.

Like a debtor's bankruptcy schedules, the first self-designation by Debtor

as a small business debtor, at the time of the filing of the petition in September,

2008, was made under penalty of perjury.  *See* Doc. No. 1 at 3.  It controlled the

conduct of the case through the disclosure statement hearing and past the

§ 1129(e) deadline for confirmation.  That Debtor filed an amended statement in

the Amended Petition in August, 2009, did not nullify the first statement.  The

initial assertion of small business debtor status retains evidentiary effect.  *Kaskel*,

269 B.R. at 715; *see also In re Rolland*, 317 B.R. 402, 422 (Bankr. C.D. Cal.

2004) ("Even when schedules are amended, the old schedules are subject to

consideration by the court as evidentiary admissions.") (citing *Kaskel*).

This presents, of course, a disputed issue of fact and a conflict in the

evidence.  Debtor's first assertion in September, 2008, is that it was almost

MEMORANDUM OF DECISION - 20

$500,000.00 below the cutoff point for mandatory application of the small

business debtor provisions of the BACPA-amended Code. Debtor now argues

that, as of the time of filing this case, it was over the threshold by some amount.

Debtor was required to prove the proposition it now advances – that it was over

the $2,190,000 aggregate debt cap of § 101(51D)(A) as of September 10, 2008.

Rule 1020(d) indicates that a "request for determination" such as that

advanced under Debtor's Status Motion is a contested matter "governed by Rule

9014." Rule 9014(d) establishes that testimony of witnesses on disputed issues of

fact shall be taken in the same manner as in adversary proceedings. But Debtor

offered no testimony at the September 8, 2009 hearing. It also offered no

documentary exhibits. Its Status Motion referenced the "claims register" but

Debtor provided nothing to explain what the filed claims purported to establish as

far as aggregate qualifying debt.

Debtor's arguments at hearing relied solely on the total amount shown on

the Clerk's claims register.[23] However, Debtor provided no analysis as to any of

the claims filed. Thus, it failed to establish that the Clerk's summary total was

accurate, or that none of the proofs filed included contingent or unliquidated

claims, which § 101(51D)(A) excludes.

It was Debtor's burden, under the Status Motion, to provide evidence that

---

[23]   Debtor argued that the amount there shown was $2,215,100.65, or $25,100.65 over
the cap of § 101(51D)(A). The actual amount on the "total" line of the Clerk's claims register
accessible on CM/ECF as of the date of this Decision is $2,218,852.32.

MEMORANDUM OF DECISION - 21

the amount of qualifying debt as of September 10, 2008, was over $2,190,000.00.
The prior assertion by Debtor that qualifying debt was substantially below this
amount may be considered as evidence under Fed. R. Evid. 801(d).[24]  Debtor
presented no preponderating contrary evidence.  Without such evidence, the Court
has been given inadequate reason to "enter[] an order finding that the debtor's
[original] statement is incorrect."  Rule 1020(a).[25]

**CONCLUSION**

Debtor has not sustained its burden in attempting to overcome the
designation it made at the commencement of the case, and has not justified entry
of an order under Rule 1020(a).  The Status Motion will therefore be denied.  The
filing of the Amended Petition is, standing alone, insufficient to alter what has
transpired previously in the case.  Debtor failed to obtain confirmation of its Plan
within 45 days of the Plan's filing, as required by § 1129(e).  The deadline for
confirmation was not timely extended in compliance with the mandatory
provisions of § 1121(e).  The Extension Motion, to the extent directed at the prior

---

[24] *Kaskel*, 269 B.R. at 715; *Bohrer*, 266 B.R. at 201.  *See also American Express Travel Related Servs. Co. v. Vinhnee (In re Vinhnee)*, 336 B.R. 437, 449 (9th Cir. BAP 2005); *Kilborn v. Haun (In re Haun)*, 396 B.R. 522, 530 n.16 (Bankr. D. Idaho 2008).

[25] The UST also argues that the belated redesignation should not be allowed based on principles of judicial or equitable estoppel.  *See In re Save Our Springs (S.O.S.) Alliance, Inc.*, 393 B.R. 452 (Bankr. W.D. Tex. 2008) (adopting such an analysis against a small business debtor's attempted redesignation after failure to meet the 45-day confirmation deadline).  While the analysis in *Save our Springs* is compelling, the Court concludes it need not address judicial estoppel since it finds Debtor's attempts at amendment of the statement unpersuasive and without sufficient evidentiary support.

MEMORANDUM OF DECISION - 22

deadline and failure, is unavailing.  It, too, will be denied.

Cause exists under § 1112(b)(1) and (4) for dismissal or conversion of the case.  The Court finds no factors, *see* § 1112(b)(1), which would result in a ruling other than conversion or dismissal.  The UST's Dismissal Motion will therefore be granted.  Given a paucity of evidence from the parties on whether conversion or dismissal would be in the best interests of creditors and the estate, but based on the entirety of the record before the Court, it is determined that the case will be dismissed.

Under the circumstances and given these rulings, the § 331 applications for Debtor's counsel and accountants, and all other requests not specifically addressed above, are rendered moot.

An Order will be entered in accord with the foregoing.

DATED:  October 29, 2009

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 23